J-A29029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF I.A.I.R. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.R., MOTHER | : | |
| | : | |
| | : | No. 2104 EDA 2018 |

Appeal from the Order Entered June 21, 2018
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2016-A0181

BEFORE:   OTT, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 23, 2019**

Appellant, N.R. ("Mother"), appeals from the June 21, 2018 Order entered in the Montgomery County Orphans' Court, which involuntarily terminated her parental rights to I.A.I.R. ("Child").  Mother's counsel has filed an **_Anders_** Brief, together with an Application to Withdraw as Counsel.[1]  After careful review, we affirm the June 21, 2018 Order and grant counsel's Application to Withdraw.

The relevant factual and procedural history is as follows.  Child was born in February of 2016.  On or around March 22, 2016, Montgomery County Office of Children and Youth ("OCY") and the Norristown Police Department ("Police") received a report that Child was born as a result of incest and had not received any pre-natal or post-natal medical care.  OCY and Police went to the home

---

[1] **_See Anders v. California_**, 386 U.S. 738 (1967).

---

\*   Former Justice specially assigned to the Superior Court.

of then-48-year-old H.R ("Father") and his daughter, then-21-year-old Mother, where Father admitted to Police that he was the biological father to both Mother and Child. Mother told Police that she was Child's biological mother and confirmed that Father was the biological father. Mother told OCY that Jesus had instructed her to engage in a sexual relationship with Father, which started when Mother was 20 years old. Mother and Father also told OCY that Child was born at home without medical care and that Jesus did not want Child to receive medical care. Police subsequently arrested Father and OCY obtained an Order for Emergency Custody.

On April 5, 2016, the trial court adjudicated Child dependent and placed Child in foster care after hearing evidence that Father was incarcerated, charged with Incest, and that OCY had concerns about Mother's mental health and the safety of Child. Moreover, OCY presented evidence that Mother was unwilling to cooperate with OCY, was unwilling to accept services and baby supplies from OCY, and was unwilling to obtain medical care for Child.

On November 14, 2016, OCY filed a Petition to Terminate Mother's Parental Rights. The trial court held hearings on March 1, 2017, and June 21, 2018.[2]

---

[2] Father entered a guilty plea to Incest on September 9, 2016, but the court did not sentence him until April 17, 2018. The trial court continued the termination hearing until after the criminal court entered Father's Judgment of Sentence.

Relevant to this appeal, OCY presented testimony from Stephen Miksic, Ph.D., who completed a Forensic Psychological Parenting Evaluation of Mother on August 19, 2016. Dr. Miksic diagnosed Mother with Schizophrenia and Delusional Disorder. N.T. TPR Hearing, 3/1/17, at 40. He testified that Mother experiences hallucinations and delusions of the Lord talking to her, seeing the Lord, and having special knowledge from the Lord of what the future would hold for Mother. *Id.* at 37-38. Dr. Miksic clarified that Mother's religious ideations were not simply religious beliefs, but rather a mental health disorder because "[w]hen [the beliefs] begin to impact the safety and welfare of that person or others around them, then [the beliefs] become a psychiatric disorder in need of treatment." *Id.* at 44.

Dr. Miksic explained how Mother's mental health diagnoses would affect her ability to parent, stating: "[t]he beliefs that she expressed and the thoughts of evil spirits that could intrude, her constantly relying on the Lord to provide, interfered with her ability to plan or anticipate consequences for herself or a child, caused her to be very passive, and definitely posed a problem for her to act in a protected capacity for her child." *Id.* at 40-41.

Dr. Miksic recommended that Mother participate in a psychiatric consultation, individual counseling, and parenting education. He concluded to a reasonable degree of psychological certainty that if Mother did not engage in mental health treatment, her prognosis for having the capacity to parent Child would be poor. *Id.* at 42. Specifically, Dr. Miksic testified:

> [Mother has] very persistent beliefs, even when not necessarily experiencing auditory or visual hallucinations, that those experiences, the evil spirits, were definitely real; that she had encountered them; that she needed to be ready for them; and that the Lord would tell her what to do on a daily basis so she wouldn't need to plan ahead suggest[s] that without treatment the prognosis for her improving independent skills or parenting capacity would be very poor."

*Id.* Finally, Dr. Miksic testified that he had concerns about Mother's ability to demonstrate emotional attachment to Child. *Id.* at 52-53.

OCY also presented testimony from the OCY caseworker, Monica Monaghan. Ms. Monaghan testified that Mother's Family Service Plan Objectives included: (1) address mental health needs with an evaluation and follow through with all recommendations; (2) prove financial stability; (3) show an understanding of age appropriate behaviors; (4) successfully engage in and complete a parenting program; (5) have safe and stable housing; (6) understand and use responsible sexual behaviors; (6) work with and meet with Time Limited Family Reunification ("TLFR") worker; and (7) write a home and care plan if Child were to return home. *Id.* at 81.

Ms. Monaghan testified that Mother participated in two psychiatric evaluations, which both recommended follow-up treatment and therapy, but Mother failed to engage in any ongoing mental health treatment. *Id.* at 80. Ms. Monaghan testified to a specific incident on September 28, 2016, when she met with Mother to discuss treatment recommendations. *Id.* at 83. Mother stated that she did not need treatment because Jesus talks to her and became extremely agitated and angry. *Id.* Mother refused to leave the office

and Ms. Monaghan had to call the Adult Mobile Crisis team to assist, who eventually convinced Mother to leave after several hours. *Id.*

Ms. Monaghan testified that Mother began to work on a home and care plan, but never finished it; Mother was discharged from TLFR services because she was not meeting any goals; Mother failed to obtain employment and did not have her own home; and although Mother participated in a parenting program, Mother did not demonstrate any improvement in parenting skills. *Id.* at 84-86.

Ms. Monaghan explained to the trial court that Mother consistently attended visitation but Ms. Monaghan had concerns about her parenting ability during the visits. Specifically, Ms. Monaghan testified that Mother had a hard time deviating from a schedule; she would refuse to feed or change Child as needed if it deviated from the schedule. *Id.* at 89-90. Ms. Monaghan expressed concern about Mother's ability to care for Child independently and testified that Mother would not respond to Child's needs during the visits. *Id.* at 90.

With respect to a bond between Mother and Child, Ms. Monaghan testified that she observed "minimal bond" between Mother and Child. She stated that Child was familiar with Mother, but not bonded to Mother and observed that their relationship did not improve over time. *Id.* at 90-91. Ms. Monaghan explained that Child was "[v]ery bonded" to his foster parents and his needs were being met. *Id.* at 92-93. Ms. Monaghan stated that it was in

Child's best interest to be adopted and Child would not suffer harm if the trial court terminated Mother's parental rights. *Id.* at 93-94.

Finally, OCY presented testimony from Rebecca Wheeler, a TLFR social worker who worked with Mother. Ms. Wheeler explained that Mother was willing to work with TLFR but would not accept help from other community resources because Jesus did not say it was okay. *Id.* at 59. Ms. Wheeler testified that Mother was not willing to get a job because Jesus would provide for her financially. *Id.* at 60. Mother was unwilling to follow up with any ongoing mental health treatment recommendations for medication or therapy. *Id.* at 61. Ms. Wheeler also observed Mother's visitations with Child and did not see an overall improvement in Mother's parenting skills or Mother's relationship with Child. *Id.* at 63. Ms. Wheeler testified that Mother was unable to be flexible and responsive and "pick up those cues of [Child]" to be fed or changed. *Id.* at 65.

On June 21, 2018, the trial court granted the Petition and involuntarily terminated Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(2) and (a)(5), and found that termination would be in Child's best interest pursuant to 23 Pa.C.S. § 2511(b).[3]

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925. On September 6, 2018, counsel filed an *Anders* Brief and

---

[3] The trial court also terminated Father's parental rights.

Application to Withdraw as Counsel.  Mother did not file a *pro se* or counseled response to either the Brief or the Application.

In his **Anders** Brief, counsel raises the following issues:

1. Whether the honorable court committed an error of law and/or abuse of discretion when it held that [OCY] had proven by "clear and convincing evidence" that [Mother]'s parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(2) in that the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused [Child] to be without essential parental care, control, or subsistence necessary for their physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

2. Whether the honorable court committed an error of law and/or abuse of discretion when it held that [OCY] had proven by "clear and convincing evidence" that [Mother]'s parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(5) in that the child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of [Child] continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of [Child] within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of [Child].

3. Whether an application to withdraw as counsel should be granted where counsel has investigated the possible grounds for appeal and finds the appeal frivolous?

**Anders** Brief at 6 (reordered for ease of disposition; some capitalization omitted).

Before this Court may consider the merits of the issue raised, we must address counsel's Application to Withdraw.  **See Commonwealth v. Daniels**,

999 A.2d 590, 593 (Pa. Super. 2010) ("When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In order for counsel to withdraw from an appeal pursuant to *Anders*, our Supreme Court has determined that counsel must meet certain requirements, including:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). *See also In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014) (explaining that this Court has extended the *Anders* principles to appeals involving termination of parental rights).

In the instant case, counsel has complied with all of the requirements of *Anders* as articulated in *Santiago*. Additionally, counsel confirms that he sent Mother a copy of the *Anders* Brief, as well as a letter explaining to Mother that she has the right to proceed *pro se* or retain new counsel. *See Commonwealth v. Millisock*, 873 A.2d 748, 751 (Pa. Super. 2005) (describing notice requirements). Counsel appended a copy of the letter to his Petition to Withdraw.

Because counsel has satisfied the above requirements, it is now this Court's duty to conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel and render an independent judgment as to whether the appeal is, in fact, wholly frivolous. **See Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (noting that **Anders** requires the reviewing court to "review 'the case' as presented in the entire record with consideration first of issues raised by counsel.").

The first issue presented in the **Anders** Brief avers that OCY failed to present clear and convincing evidence that Mother has a continuing incapacity to perform parental duties pursuant to 23 Pa.C.S. § 2511(a)(2). **Anders** Brief at 10.

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id.** We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id.** We may not reverse, however, merely because the record would support a different result. **Id.** at 826-27.

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental

rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

Finally, this Court only needs to agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re Adoption of C.D.R.*, 111 A.3d 1212, 1215 (Pa. Super. 2015).

Instantly, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (a)(5). To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence that the following three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; **and** (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be

remedied. ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (emphasis added); 23 Pa.C.S. § 2511(a)(2). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002).

Parents have an "affirmative duty" to work toward the return of their children. ***In re Julissa O.***, 746 A.2d 1137, 1141 (Pa. Super. 2000) (citations omitted). At a minimum, this "affirmative duty" requires the parent to show a willingness to cooperate with the agency to obtain the services necessary for the performance of parental duties and responsibilities. ***Id.***

Here, the trial court concluded that OCY presented clear and convincing evidence that Mother "is not capable of performing minimal parental duties." Trial Ct. Op., dated 7/13/18, at 25. Our review of the record supports the trial court's findings of fact and conclusions of law.

OCY presented evidence that Mother suffered from Schizophrenia and Delusional Disorder, which, if left untreated, would adversely affect her ability to parent Child and keep Child safe. OCY presented evidence that Mother refused to engage in any recommended mental health services or take medication. Likewise, Mother refused to obtain employment or complete her home plan. The trial court heard testimony from both the caseworker and the TLFR social worker that Mother did not demonstrate appropriate parenting

skills during her weekly visitation with Child, and that Mother refused to feed or change Child's diaper as needed. Importantly, both testified that her parenting skills did not improve over time. Accordingly, the record confirms that Mother is incapable of parenting Child and that she cannot or will not remedy her parental incapacity.

The certified record supports the trial court's findings of fact and conclusions of laws. We, thus, conclude that the trial court did not abuse its discretion in concluding that OCY met its burden of proof with respect to Section 2511(a)(2).

We also agree with the Orphans' Court's determination that OCY met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of the Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the Orphans' Court must also discern the nature and status of the parent-child

bond, with utmost attention to the effect on the child of permanently severing that bond.  *Id.*

Most significantly, whether a meaningful bond exists is determined, first, by the extent to which a parent provides safety, security, and support for the child's physical and mental needs, on a daily basis.  If a meaningful bond is found to exist, the analysis hinges on the extent to which the child will be harmed by the severance of that bond.  Thus, the bond-effect analysis necessarily depends on the circumstances of the particular case.  *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).  Importantly, in cases where there is no evidence of meaningful and extensive contact between a parent and a child, it is reasonable to infer that no bond exists.  *Id*. at 762-63.

In the instant case, the trial court had the benefit of a formal bond assessment as well as testimony from child welfare professionals.  The trial court made a finding that Dr. Miksic testified credibly that Mother is unable to emotionally attach to Child.  Trial Ct. Op., dated 7/13/18, at 27.  Moreover, the trial court made a finding that there was no improvement in the bond between Mother and Child during approximately thirty visits, despite one-on-one assistance provided by caseworkers.  *Id.* at 27-29.  Finally, the trial court made a finding that Child has a strong bond with the foster/pre-adoptive family with whom the Child has lived since infancy such that termination of Mother's parental rights will not negatively impact the Child.  *Id.* at 28.  The certified record supports the trial court's findings of fact and credibility

determinations, and, thus, the trial court did not abuse its discretion when it determined that termination of Mother's parental rights would be in Child's best interest pursuant to Section 2511(b).

The certified record supports the trial court's findings of fact and credibility determinations. We discern no error of law and conclude that the trial court properly exercised its discretion in terminating Father's parental rights pursuant to Section 2511(a) and (b). Accordingly, we agree with counsel and conclude that the issues raised in the **Anders** Brief are wholly frivolous.

Furthermore, our independent review of the record, conducted in accordance with **Yorgey**, **supra**, confirms counsel's assertion that there are no issues of merit to be considered by this Court and this appeal is, thus, wholly frivolous. Thus, we grant counsel's Application to Withdraw and affirm the Order terminating Mother's parental rights.

Order affirmed. Application to Withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/19

- 14 -